UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GARNET L. GARBER    *Plaintiff,* | ) ) ) | |
| vs. | ) ) ) | 1:16-cv-03221-JMS-MJD |
| NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration,*    *Defendant.* | ) ) ) ) | |

**<u>ENTRY ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Garnet L. Garber previously applied for a period of disability and disability insurance benefits on March 13, 2011. [Filing No. 13-3 at 3.] Ms. Garber was initially denied benefits, and after a hearing before Administrative Law Judge Roxanne Fuller ("ALJ Fuller"), Ms. Garber was determined not to be disabled on August 23, 2012. [Filing No. 13-3 at 3.] Ms. Garber did not request the Appeals Council to review ALJ Fuller's decision. [Filing No. 13-3 at 3.]

On July 31, 2013, Ms. Garber applied for a period of disability and disability insurance benefits for the second time, alleging an onset date of March 15, 2010. [Filing No. 13-2 at 21.] Ms. Garber's July 31, 2013 application was denied initially and upon reconsideration. [Filing No. 13-2 at 21.] Ms. Garber requested a hearing, which was presided over by Administrative Law Judge John Murdock ("the ALJ"). [Filing No. 13-2 at 21.] The ALJ issued a decision concluding that Ms. Garber was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 21-30.] Ms. Garber requested that the Appeals Council review the ALJ's decision. [Filing No. 13-2 at 2.] On November 7, 2016, the Appeals Council denied Ms. Garber's request, [Filing No. 13-2 at 2], rendering that decision the final decision of the Commissioner of the Social Security Administration ("the Commissioner"). 20 C.F.R. § 404.981. Ms. Garber then filed this action under 42 U.S.C. § 405(g), requesting that this Court review the Commissioner's decision.

This Court referred the matter to Magistrate Judge Mark J. Dinsmore ("the Magistrate Judge"), who issued a Report and Recommendation. [Filing No. 24.] In the Report and Recommendation, the Magistrate Judge found the ALJ's decision to be supported by substantial evidence and recommended the ALJ's decision be affirmed. [Filing No. 24 at 12.] Ms. Garber timely filed her Objection to the Report and Recommendation, which is presently pending before the Court. [Filing No. 25.] The Commissioner did not respond to the Objection.

# I.
## STANDARD OF REVIEW

When the Court refers a dispositive matter to the Magistrate Judge—as it did here—a party may object to the Magistrate Judge's report and recommendation and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R Civ. P. 72(b)(3).

In conducting its de novo review of the Magistrate Judge's Report and Recommendation, the Court will review this matter as it does other social security appeals. Specifically, the Court is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotation omitted).

The ALJ must apply the five-step sequential inquiry set forth in 20 C.F.R. § 404.1520(a)(4) to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995) (citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Garber was fifty-six years old at the time of her second application for disability insurance benefits. [Filing No. 13-5 at 2.] She has previously worked as a fast food worker, membership salesperson, food demonstrator, and retail store manager. [Filing No. 13-2 at 61-62.] Ms. Garber claims she is disabled based on a variety of impairments, which are discussed as necessary below.

Using the five-step sequential evaluation set forth by the Social Security Administration ("SSA") in 20 C.F.R. § 404.1520(a)(4), the ALJ denied Ms. Garber's application for disability insurance benefits in a May 29, 2015 decision. [Filing No. 13-2 at 18.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Garber had not engaged in substantial gainful activity[1] during the period from her alleged onset date of March 15, 2010, through the date she was last insured of September 30, 2014. [Filing No. 13-2 at 23.]

- At Step Two, the ALJ found that Ms. Garber suffered from the following severe impairments: degenerative disc disease of the lumbar spine with lumbar radiculopathy, status-post fusion; hypertension; and small vessel disease, status-post vessel strokes. [Filing No. 13-2 at 23.]

- At Step Three, the ALJ found that Ms. Garber did not have an impairment or combination of impairments that meets, or medically equals, one of the listed impairments. [Filing No. 13-2 at 26.]

- After Step Three but before Step Four, the ALJ concluded that Ms. Garber had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except never climbing ladders/ropes/scaffolds, and no more than occasional climbing

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

ramps/stairs, balancing, stooping, kneeling, crouching, or crawling. [Ms. Garber] was to avoid all exposure to hazardous machinery or heights." [Filing No. 13-2 at 27.]

- At Step Four, the ALJ found that Ms. Garber could perform her past relevant work as a membership solicitor, food demonstrator, and retail store manager. [Filing No. 13-2 at 30.]

- The ALJ did not proceed to Step Five.

Based on these findings, the ALJ concluded that Ms. Garber was not disabled as defined by the Act, and not entitled to receive disability insurance benefits. [Filing No. 13-2 at 31.]

### III.
#### DISCUSSION

The Magistrate Judge recommended affirming the ALJ's decision, and Ms. Garber timely filed an objection to all of the Magistrate Judge's conclusions. Ms. Garber argues that the ALJ made several errors that require remand, which can be consolidated into two overall claims: (1) that the ALJ erred in his consideration of Ms. Garber's RFC; and (2) that the ALJ erred in concluding that Ms. Garber could perform her past relevant work. Ms. Garber also argues that, if her claim is remanded, she should be permitted to present evidence regarding the period previously adjudicated by ALJ Fuller, regarding her first DIB claim. She asserts that the ALJ here *de facto* reopened her prior application by considering evidence regarding the period previously adjudicated. As noted, the Commissioner did not respond to Ms. Garber's Objection. The Court considers each of Ms. Garber's arguments in turn.

**A. RFC Determination**

Ms. Garber contends that the ALJ failed incorporate any of her mental impairments into his RFC determination, requiring remand. [Filing No. 25 at 16.] Ms. Garber argues that the ALJ concluded that Ms. Garber had medically determinable non-severe mental impairments including depression; dysthymic disorder; anxiety disorder; panic disorder without agoraphobia; and major

depressive disorder, severe, without psychotic features. [Filing No. 25 at 16 (citing Filing No. 13-2 at 24).] And Ms. Garber points out that the ALJ found her to have mild limitations in activities of daily living, [Filing No. 13-2 at 25], social functioning, [Filing No. 13-2 at 26], and in maintaining concentration, persistence, or pace, [Filing No. 13-2 at 26]. Ms. Garber argues that the ALJ erred in failing to reference or include those limitations in his RFC determination, or in questioning the Vocational Expert ("VE"). [Filing No. 15 at 14.]

In response, the Commissioner argues that "the ALJ reasonably considered the cumulative effect of [Ms. Garber's] impairments…and properly concluded no mental limitations were warranted in the RFC." [Filing No. 20 at 9.] Specifically, the Commissioner points out that Ms. Garber took vacations, got married, and testified that that she was not fired for "disagreements with her supervisors," but rather quit. [Filing No. 20 at 11.] The Commissioner argues that Ms. Garber's "subjective symptoms were inconsistent with the record and, therefore, restrictions to accommodate her mild limitations were not warranted." [Filing No. 20 at 11.]

Between steps three and four of the disability claim analysis, an ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when posing a hypothetical to a VE and when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) ("We have stated repeatedly that ALJs must provide VEs with a complete picture of a claimant's residual functional capacity…. [I]f the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations….We require the VE to know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking"). If an ALJ fails to include

all of this information, then the VE's hypothetical and the assessment are insufficient unless: (1) the VE independently viewed the claimant's medical records or heard testimony regarding the limitations in question; or (2) the ALJ phrased the hypothetical in such a way that "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). If the ALJ did not incorporate all limitations supported by medical records in the hypothetical posed to the VE and did not use those limitations in determining the claimant's RFC, then remand is required. *Id.* at 621.

In this case, when the ALJ conducted Step Two of the disability claim analysis, he found that, based on Ms. Garnet's medical history, she had mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace. [Filing No. 13-2 at 25-26.] Yet he made no mention of those limitations when determining her RFC—either in the RFC itself, or in the accompanying discussion. While the ALJ concluded in his Step Two assessment that some of Ms. Garber's mental impairments were not as severe as reported by Ms. Garber and a licensed mental health counselor, [Filing No. 13-2 at 25], he nonetheless found their existence to be supported by the records, and that Ms. Garber suffered from the above mild limitations, [Filing No. 13-2 at 24-26]. Contrary to the Commissioner's assertions, the ALJ did not discuss whether any RFC restrictions were warranted as a result of these impairments—his discussion was limited to his Step Two determination of the severity of those impairments. This was error. The Court cannot conclude from the ALJ's silence that he "appropriately concluded that [Ms. Garber's] non-severe mental impairments did not warrant additional restrictions in the [RFC] finding," as suggested by the Commissioner. [Filing No. 20 at 7.]

Moreover, the Court cannot conclude that this error was harmless, because the ALJ did not present the VE with any hypotheticals regarding a person with Ms. Garber's particular limitations. Instead, the ALJ declined to present any hypotheticals, and instructed Ms. Garber's counsel that "if there's something [counsel] would like to ask [the VE], this would be a good time to do it." [Filing No. 13-2 at 62.] Ms. Garber's counsel then asked the VE whether any jobs would be available to a hypothetical individual if that person were absent from the job for about four days per month. [Filing No. 13-2 at 62.] The VE answered that there would not be any jobs available. [Filing No. 13-2 at 62.] From this record, the Court cannot conclude that the ALJ considered the impact of Ms. Garber's mental impairments on her RFC, and therefore whether she would be capable of performing her past relevant work, as determined by the ALJ.

For these reasons, the Court **SUSTAINS** Ms. Garber's Objection to the Magistrate Judge's Recommendation and Report regarding the determination of her RFC.

**B. Past Relevant Work**

Given that the Court concludes that remand is required on the issue of Ms. Garber's RFC, the Court need not discuss the other issue raised by Ms. Garber—namely, the ALJ's evaluation of whether Ms. Garber could perform skilled or semi-skilled past relevant work. Should this issue arise on remand, the ALJ should take care to analyze this issue thoroughly, including his assessment of the opinions of Dr. Neville, Dr. Horton, and Dr. Boggs.

**C. Reopening of Prior Application**

Lastly, Ms. Garber argues that the ALJ in this case reopened her first disability insurance benefits application, decided in August 2012 by ALJ Fuller, by adjudicating on the merits whether Ms. Garber had been disabled since March 2010—*i.e.*, during a period covered by her first application. [Filing No. 15 at 17.] Therefore, Ms. Garber argues, she should be permitted to prove

entitlement to benefits for the entire time period and subject matter adjudicated by ALJ Fuller on her first claim. [Filing No. 15 at 19.] The Commissioner argues that a reopening has not occurred, because the ALJ did not determine, as required by the relevant agency regulations, that good cause existed for doing so. [Filing No. 20 at 16.]

As relevant here, 20 C.F.R. § 404.988 provides that a prior decision may be reopened "(a) within 12 months of the date of the notice of the initial determination, for any reason; [or] (b) [w]ithin four years of the date of the notice of the initial determination if [the SSA finds] good cause, as defined in § 404.989 to reopen the case." 20 C.F.R. § 404.988(a), (b). Good cause exists if "(1) [n]ew and material evidence is furnished; (2) [a] clerical error in the computation or recomputation of benefits was made; or (3) [t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989. The parties agree that the ALJ did not state that he was reopening Ms. Garber's prior application, or conduct any analysis into reopening pursuant to the above regulations.

Ms. Garber argues instead that the ALJ *de facto* reopened her claim by choosing to consider evidence that originated during part of the period covered by that first application. [Filing No. 15 at 17; Filing No. 25 at 13.] In support of her argument that reopening may occur *de facto*, as opposed to explicitly, Ms. Garber cites to several cases, only two of which are in-circuit. The first case cited by Ms. Garber, *Meredith v. Bowen*, is not instructive here. 833 F.2d 650, 652-53 (7th Cir. 1987). It involves an instance in which an ALJ explicitly reopened an application in order to determine whether the claimant had been disabled during an insured period that had been previously excluded. *Id.* Ms. Garber cites to no Seventh Circuit precedent outlining whether, or in what circumstances, *de facto* reopenings may occur.

9

The other in-circuit case cited by Ms. Garber was decided by the Northern District of Illinois in 1986. *McGee v. Bowen*, 647 F. Supp. 1238 (N.D. Ill. 1986). In that case, the court considered whether an ALJ's determination regarding the application of *res judicata* to a subsequent claim was reviewable by a district court.[2] While the district court stated (without citation) that a reopening of a prior claim "may be constructive," in that case, the ALJ was aware of a prior claim, stated that it should not be reopened, and stated that *res judicata* applied to bar the subsequent claim. The ALJ then proceeded nonetheless to discuss the merits of the subsequent claim, moving through at least four of the five steps of the sequential analysis. In other words, the ALJ determined that the second claim was barred by preclusion principles, but proceeded to evaluate it anyway. On review, the district court stated that:

> [t]he ALJ can, of course, make enough use of the record to determine if *res judicata* is appropriate. Such use does not effect a constructive reopening. He may, and should, examine material used for the prior claim to determine if the claims are the same, and look at any newly submitted evidence to see if there is good cause to reopen. But he cannot proceed past that point to a decision on the merits. If he finds that the claims are the same, and nevertheless either reviews the old record or considers the new evidence in an evaluation of the merits of the claim, then the claim has been constructively reopened.

*Id.* at 1245.

The circumstances present in *McGee* do not resemble Ms. Garber's claim. In *McGee*, the Court considered whether an application had been reopened when the ALJ was made aware of a prior claim, was able to specifically consider whether to reopen it, and was able to evaluate whether the subsequent claim overlapped with the prior one to the extent that it would be barred by *res*

---

[2] The decision not to reopen and the decision to apply *res judicata* to a subsequent claim have been described as "two halves of the same decision." *McGee*, 647 F. Supp. at 1244. The Commissioner's decision not to reopen is not reviewable by a district Court. *See Califano v. Sanders*, 430 U.S. 99, 107-09 (1977). However, the decision regarding whether to apply *res judicata* to a subsequent claim has been held by some courts to be reviewable. *See McGee,* 647 F. Supp. at 1245.

*judicata.* Here, Ms. Garber makes no argument as to what information was in front of the ALJ regarding her prior application, and the record in that claim was not made part of the record here. If the Court were to adopt Ms. Garber's theory of *de facto* reopening, an ALJ could reopen an application purely by accident, if he were unaware of the prior application (either through an absence of information in the record or through inadvertence) and adjudicated an individual's claim based on the onset date alleged by the claimant. Given the regulatory requirements for reopening imposed by 20 C.F.R. § 404.988 *et seq*, and given the absence of any authority on point, the Court declines to fashion the rule proposed by Ms. Garber.[3]

Even assuming that *de facto* reopening is recognized in this circuit, the Court simply cannot conclude that such a reopening occurred here.

### IV.
#### CONCLUSION

Court **SUSTAINS IN PART** Ms. Garber's Objection, **VACATES** the ALJ's decision denying Ms. Garber's benefits, and **REMANDS** this matter for further proceedings under 42 U.S.C. § 405(g). Final judgment will issue accordingly.

Date: 11/29/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[3] Moreover, Ms. Garber does not address the relationship between a *de facto* reopening and *res judicata*, which (as described in *McGee*) could impact the scope of this Court's review.